UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA          :
                                  :
                                  :
                                  :    NO. 3:CR-06-59
          -vs-                    :
                                  :    (Judge Kosik)
                                  :
RODNEY BOOMER a/k/a "RON,"         :
                                  :
               Defendant          :


# MEMORANDUM AND ORDER

     This matter is before us on a defense motion to suppress
evidence.  After briefing, the court scheduled a hearing.

## Background

     The defendant, Rodney Boomer, is charged in an indictment with
conspiracy to distribute in excess of five grams of cocaine base,
marijuana and heroin in violation of 21 U.S.C. §846.  There are
five additional counts; three substantive counts of distribution
and possession; one count of a convicted felon possessing a firearm
and ammunition in violation of 18 U.S.C. §§922(g)(1) and 924(e)(1),
and one count charging the defendant with possession and carrying
a firearm during and in relation to a drug trafficking crime in
violation of 18 U.S.C. §924(c).[1]

---

[1]Cathy Boomer, the wife of Rodney Boomer, is also charged
with conspiracy, as well as two substantive counts.

The defense motion claims, (1) the search of a business and a residence on July 27, 2006 by the Pocono Mountain Police was without appropriate consent or warrant to search and, (2) any statements of defendant Boomer were not voluntary because they were given under duress and in violation of the U.S. Constitution.  The defendant seeks to suppress all evidence acquired in the searches, as well as defendant's statements.

### **Findings of Fact**

Because there was a gross divergence of evidence as to the events and circumstances on which we must base our conclusions, we are obliged to make findings based on credibility.  Although the defense offered contradictory evidence, we find the evidence of the prosecution to be more credible because it is corroborated by documents, as well as reports, which, in some instances, memorialized events.

On July 27, 2006, Eric Kerchner, a Monroe County detective, was involved in a controlled purchase of a controlled substance from the defendant Rodney Boomer.  The officer was aware of earlier purchases of drugs from Boomer.  In preparation for the controlled purchase, the witness met with a confidential informant (CI) who was searched and then provided with $450.00 which was photographed. They both got into a car and drove to the New York Styles Clothing and Footwear Store.  In mid-afternoon, the CI approached the store door, which was locked.  A female opened the door.  After a few minutes, the CI exited, got back into the officer's car, and handed

him a bag with white powder which field tested positive for cocaine.

The CI told the officer he was returning to the store to introduce the officer as the customer.  The CI had informed Boomer that the CI was purchasing on behalf of a customer.  The door was ajar and opened by the female who let them in.  The CI introduced the officer to Boomer.  The CI had negotiated a $50 credit from Boomer because of the excessive charge for the drugs.  The officer selected a pair of sneakers and went to the cash register where he handed Boomer a $20 bill, expecting change.  Boomer balked, objecting to connecting the drug purchase with a merchandise transaction.  Boomer privately chastised the CI for making such a connection.  After the female let them out the door, the CI and the officer were about to depart the area.  Boomer exited the store and again commenced arguing with the CI.

Upon returning to police headquarters, the CI told them there were additional controlled substances on the premises.  Believing they had probable cause to arrest Boomer, a detail from the Pocono Mountain Regional Police headed by Sgt. Chris Wagner proceeded to the store at approximately 6:00 p.m.  On reaching the store, the officers observed the female.  Apparently, after seeing the police, she ran into the store, which was open for business.  The police pursued the female through the open door as she was yelling something.  Sgt. Wagner observed the defendant behind the counter. Defendant was reaching into a cargo pocket on his right hip. Boomer was ordered to raise his hands.  The defendant hesitated as the

officer moved behind the counter.  The officer drew his sidearm. After the defendant was secured, Sgt. Wagner returned to what it was the defendant appeared to discard.  The object turned out to be a bandana with a substance the officer believed to be marijuana. In the process, the officer observed a 9mm handgun directly in the same area.

Another officer with the Pocono Mountain Police, Richard Lutchke, accompanied the arresting detail.  He had used the CI over a period of ten years, and was aware of his previous controlled purchases from Boomer.  The officer had verified the CI's purchases, as well as other arrests due to his reliability.

After Boomer was arrested and taken into custody, his wife, Cathy Boomer, and his mother arrived at the business within a half hour.  Having been informed by a superior that Boomer identified his wife as owner of the store, the officer requested her consent to a search of the premises.  He first had her execute a non-arrest form.  Cathy Boomer said she owned the store and the business.[2] She also represented that the 9mm gun was hers and was purchased by her.  Cathy Boomer acknowledged that her husband was selling drugs. Presented with a written consent to search form for the business, Cathy Boomer signed it.

While in custody at the business, Boomer wished to cooperate. Without any interrogation, he volunteered incriminating information

---

[2]Boomer denies this with support of a lease to the premises in his name.  However, an employee claimed to be hired by both, and Cathy Boomer claimed ownership of the gun for security in the business.

at the scene of the arrest and later at his mother's residence.  At one point at the arrest scene, he volunteered where crack cocaine was located under the counter in the store.  He also gave written consent to search his vehicle at the store.  We believe the latter as an issue is mooted by the fact that nothing incriminating was discovered.  He was told not to say anything further until he was taken to police headquarters.

Before being taken to headquarters, the principals were taken to Lucy Boomer's house where Rodney Boomer and his wife, Cathy, shared a bedroom.  Prior to arriving at the residence of Lucy Boomer, she was provided with a non-arrest form, as well as a consent to search her house, which she signed at 6:45 p.m.  At the home, Cathy Boomer told the police that there was marijuana in the dresser drawer of the bedroom.  In fact, she directed the authorities to it while accompanying them in the search of the bedroom without any objection.

After Boomer was taken to police headquarters, he signed a waiver of his *Miranda* rights, which was witnessed by police as well as an agent with the United States Bureau of Alcohol, Tobacco and Firearms.  Again, the defendant made incriminating statements and sought to cooperate by providing useful information about himself and the criminal conduct of others.  He inquired about the results of cooperation in either federal or state charges, and was told promises could not be offered.

**Discussion**

**I.**

Initially, we shall address the business premises arrest of the defendant without a warrant and the subsequent search of the business premises.

Based on our factual findings, there was probable cause to arrest the defendant Boomer.  The authorities had evidence of previous sales of drugs from the business location.  The controlled purchase at mid-afternoon on July 27, 2006 by the CI of known reliability was carefully orchestrated.  Immediately after the sale by the defendant, the police officer was present and was introduced to Boomer.  He heard the defendant discussing the transaction with the CI.  These events constituted probable cause to arrest the defendant for committing a felony.  However, it was only after the actual purchase and confirmation that drugs were transacted was a reasonable and cautious decision made to arrest.

At approximately 6:00 p.m., a detail of police proceeded to arrest at the business place.  An employee apparently recognized their presence and entered the business premises yelling. The police pursued her through the open door and effected the arrest of the defendant.  While there may have been time in the interim to secure an arrest warrant for the defendant, the probable cause to arrest remained.  The police had every right to enter the business place through an open door in these circumstances.  Under both federal and Pennsylvania law, the law enforcement officers did not need a warrant to arrest an individual in a public place, such as

-6-

an ongoing business, so long as probable cause existed.   *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir. 1992).

On entry, the police observed the defendant reaching into his pocket.  Told to raise his hands, the defendant hesitated and discarded an object.  Once the defendant was secured, the arresting officer found the discarded object to contain a suspected controlled substance.  The officer observed a 9mm handgun in the immediate vicinity; all incident to his arrest.

The arrest was followed by the appearance of the defendant's wife and mother.  Having a good faith belief that the wife was the owner of the business, based on her representations as well as those of defendant, the police secured his wife's consent to search the business premises for drugs.[3]

We conclude the arrest and search were perfectly legal under the circumstances.  Any contraband was legally secured.

## II.

After his arrest, the defendant was secured and placed in a police vehicle.  He volunteered cooperation without any police interrogation.  He offered evidence about other known crimes by others and assented to the search of his vehicle.  He volunteered where crack cocaine was located in the business premises, although the search incident to the arrest discovered it without his input. Of course, all of this has been vehemently denied at the hearing. Regardless, the police told him to shut up.

---

[3]Based on the wife's claim that she owned the 9mm weapon for security in the business, she was at least a co-owner who could consent to the search of the premises.

After he was taken to headquarters, the defendant was formally *Mirandized*.  He executed a written acknowledgment and waiver.  His offered cooperation continued, and he incriminated himself.  We conclude that the defendant was not under duress and voluntarily incriminated himself.

### III.

Finally, the defendant claims the search of the bedroom occupied by him and his wife at the mother's residence was without a warrant or knowing consent.

After the defendant's arrest at the business premises, we earlier noted that his wife and mother arrived.  The police were familiar with the fact that the defendant and his wife resided with the mother.  At that point, the mother was asked for her consent to search the bedroom occupied by the defendant and his wife.  She voluntarily gave her consent in writing.

At the mother's house, in addition to the police, the defendant, his mother and wife were present.  The wife told the police where drugs and other contraband could be found in the bedroom.  Her cooperation included accompanying the police in their search.

We believe it significant that although the wife cooperated and had no objection to the search of the bedroom, she was never asked for permission to search.  Although the defendant claimed that he rented the bedroom from his mother, there is little dispute that he and his wife occupied the room together.  It is reasonable to recognize that a co-habitant has the right to permit the

inspection of a bedroom as in _United States v. Matlock_, 415 U.S. 164, 171, 94 S.Ct. 988, 993, n.7 (1974), cited in _United States v. Hylton_, 349 F.3d 781, 785 (4th Cir. 2003).

In this instance, we find that the mother's consent was invalid to search the bedroom.  While it appears the wife's cooperation, without objection, constituted consent, her cooperation could very well have resulted from a false belief that the police did indeed have authority to search the bedroom.

Accordingly, we will sustain the motion to suppress the search of the bedroom and contraband recovered in the course of that search.

### Conclusion

The motion to suppress is denied in part and sustained in part.

SO ORDERED.


                                    s/Edwin M. Kosik
                                    United States District Judge


Date:  March 23, 2007